**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

THE LOUISIANA COMMUNITY DEVELOPMENT CAPITAL FUND, INC. AND ERNEST L. JOHNSON

CIVIL ACTION

VERSUS

NO. 25-985-SDD-RLB

CHOICE HOTELS INTERNATIONAL, INC.

**RULING**

The matter before the Court is a Motion to Vacate Arbitration Award[1] filed by The Louisiana Community Capital Development Fund, Inc. ("Capfund") and Ernest L. Johnson ("Johnson") (or collectively, "Guarantors"). Defendant, Choice Hotels International, Inc. ("Choice") or ("Defendant"), has filed a Memorandum in Opposition,[2] to which Guarantors filed a Reply.[3] Guarantors then filed a scanned copy of their initial state motion,[4] to which Defendant filed a Response.[5] For the reasons which follow, the Court denies Guarantors' Motion to Vacate Arbitration Award.

## I. BACKGROUND

On January 31, 2014, Choice entered into a Franchise Agreement with Faith Investments, LLC ("Faith") and Jules B. LeBlanc ("LeBlanc") (or collectively, "Principals") for construction of a hotel.[6] On the same day, Principals and Guarantors[7] signed a Guaranty Agreement wherein Guarantors "personally and unconditionally guarantee[d]

[1] Rec. Doc. No. 38.
[2] Rec. Doc. No. 18.
[3] Rec. Doc. No. 20.
[4] Rec. Doc. No. 38.
[5] Rec. Doc. No. 20.
[6] Rec. Doc. No. 24.
[7] Johnson signed both in his individual capacity and as a representative of Capfund.

that all of Franchisee's obligations under the Franchise Agreement…[would] be punctually paid and performed."[8] The Franchise Agreement required Principals to commence construction of the hotel within twelve months of signing the Franchise Agreement.[9]

After various deadline extensions, Principals failed to begin construction, so on January 28, 2020, Choice submitted the matter to the American Arbitration Association ("AAA") for arbitration, pursuant to the Franchise Agreement.[10] Choice named the Principlas and the Guarantors in the arbitration.

In August 2024, after settlement negotiations broke down, the arbitrator issued a scheduling order that gave Choice an October 1, 2024, deadline to submit a full statement of claims with a supporting motion and evidence.[11] Guarantors and Principals had until October 22, 2024, to file a response.[12] Choice had until November 1, 2024, to file a reply, at which point the arbitrator was to issue a decision within "30 days of the hearing record being confirmed as closed."[13] Guarantors and Choice each submitted motions for judgment within the assigned deadlines.[14]

The Principals made no appearance in the arbitration proceedings. Guarantors contend the deadline for the arbitrator to issue an award was early December 2024,[15] but there is no clear evidence that the record was confirmed as closed.[16] On July 1, 2025, the AAA advised the arbitrator that Principals had not received communications prior to

---

[8] Rec. Doc. No. 40-1, p. 1.
[9] Rec. Doc. No. 24, p. 7.
[10] Rec. Doc. No. 38, p. 28.
[11] *Id*. at 27.
[12] *Id*. at 23.
[13] Rec. Doc. No. 18-2, p. 3.
[14] Rec. Doc. No. 38, p. 27.
[15] Guarantors allege the deadline should have been one month after the deadline for submissions, which was December 1, 2024.
[16] Rec. Doc. No. 38, p. 11.

the deadline for submissions.[17] LeBlanc died on May 23, 2020, and Faith's corporate charter was revoked on February 15, 2019.[18] Nonetheless, the arbitrator reopened the record from July 1, 2025, to July 29, 2025, to allow Principals to submit information or request an in-person hearing.[19] Neither Principal made an appearance, submission, or request by the deadline.[20]

After expiration of the period set for Principals to respond, the record was confirmed closed on July 29, 2025.[21] The initial deadline for the arbitrator to issue a ruling was August 29, 2025;[22] however the arbitrator notified the parties that the deadline was being extended until September 5, 2025.[23] On September 2, 2025, the arbitrator awarded Choice $123,716.67 in liquidated damages and administrative costs and fees against the Principals and Guarantors, individually, and jointly and severally.[24]

On September 10, 2025, Johnson, acting as both Guarantor and attorney, sent a letter to AAA alleging Guarantors received no communication regarding delays in the award issuance.[25] Guarantors subsequently filed suit in the 19th Judicial District Court for the Parish of East Baton Rouge, and Choice removed the matter to this Court pursuant to 28 U.S.C. § 1332.[26]

Guarantors present the following arguments in support of their motion to vacate the arbitration award: (1) the arbitrator's alleged failure to provide notice of a delay in the

[17] *Id*. at 30. It is unclear why the AAA directed the arbitrator to notify the Principals since one was deceased and the other defunct.
[18] *Id*.; Rec. Doc. No. 20, p. 4.
[19] Rec. Doc. No. 38, p. 30.
[20] *Id*.
[21] *Id*.
[22] Am. Arb. Ass'n, Commercial Arbitration Rules R-40(c) (2022).
[23] *Id*. at 32.
[24] *Id*. at pp. 26-31.
[25] *Id*. at pp. 37-38.
[26] Rec. Doc. No. 1.

award issuance constitutes a due process violation;[27] (2) procedural misconduct in violation of La. R.S. 9:4210(C) and AAA Rule R-40(c) by the arbitrator caused prejudice;[28] (3) the untimely decision hindered Guarantors' ability to move for vacatur pursuant to La. R.S. 9:4213;[29] (4) Louisiana law provides a legal basis for vacatur under La. C.C. arts. 3537 and 3540;[30] (5) an award issued against deceased and non-existent parties is void;[31] (6) their obligations are accessory to the Principals' obligations and thus, are null and void;[32] and (7) the Franchise Agreement is irrelevant in evaluating Guarantors' claims that the arbitrator failed to provide notice, issuance of an award against deceased and extinct parties, and issuance of an untimely award, because Guarantors were not signatories[33] to the Franchise Agreement.[34]

Choice contends that: (1) Maryland law is applicable pursuant to the Franchise Agreement, not Louisiana law;[35] (2) Guarantors' Due Process rights were not violated;[36] (2) the arbitrator did not exceed his authority or conduct procedural misconduct;[37] (3) Guarantors were not prejudiced;[38] (4) Guarantors "judicially confess[ed]" to entering into an agreement with Choice containing an arbitration clause by filing a Motion to Vacate—but nonetheless signed a Guaranty Agreement;[39] (5) Guarantors' claim that an award issued against deceased and non-existent parties should result in vacatur is

[27] Rec. Doc. No. 38, pp. 1-6.
[28] *Id*.
[29] *Id*.
[30] *Id*.
[31] Rec. Doc. No. 20.
[32] Rec. Doc. No. 20.
[33] Choice further argues that if Guarantors truly believed there was not a binding arbitration agreement, they could have objected to an arbitration proceeding years ago, but they did not.
[34] Rec. Doc. No. 20, pp. 12-13.
[35] Rec. Doc. No. 18, pp. 9-13.
[36] *Id*. at 14-17.
[37] *Id*. at 17-20.
[38] *Id*. at 20-22.
[39] Rec. Doc. No. 40, pp. 1-5.

meritless;[40] and (6) Guarantors were represented in the arbitration and had an opportunity to defend themselves.[41]

## II. LAW AND ANALYSIS[42]

The United States Supreme Court and Fifth Circuit have long established that "review of an arbitration award is extraordinarily narrow." [43]

> [A] district court may vacate an award only if: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers. 9 U.S.C. § 10(a). An additional ground for vacating an arbitration award is that in making the award the arbitrator acted with manifest disregard for the law. [44]

While "it is not enough for petitioners to show that the [arbitration] panel committed an error—or even a serious error," vacatur is warranted when an "arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice." [45]

### a. Choice of Law

Guarantors rely on Louisiana law to support their arguments.[46] Choice correctly contends[47] that the Franchise Agreement's choice of law provision specifies Maryland

---

[40] *Id*. at 5-6.
[41] *Id*. at 6.
[42] The Movant Guarantors cite caselaw that is non-existent, suggesting the unverified and unchecked use of generative A.I. (Guarantors cite to *Sunshine State Ins. Co. v. Jones*, 77 So.3d 374 (La. App. 5 Cir. 2011) in their Memorandum in Support of Motion to Vacate (Rec. Doc. 38, p. 11)). The Court considers the Movant's brief unreliable and unpersuasive but will nevertheless address the thinly supported and unreasoned arguments made.
[43] *Glover v. IBP, Inc*., 334 F.3d 471, 474 (5th Cir. 2003).
[44] *Hall Street Assoc., L.L.C. v. Mattel, Inc*., 128 S.Ct. 1396, 1398 n.4 (2008); *Brabham v. A.G. Edwards & Sons Inc*., 376 F.3d 377, 380-381 (5th Cir. 2004); *Glover,* 334 F.3d at 474.
[45] *Stolt-Nielsen S.A. v. AnimalFeeds International Corp*., 130 S.Ct. 1758, 1767 (2010) (When an Arbitrator exceeds his powers of interpreting and enforcing a contract, then the decision may be vacated under § 10(a)(4).)
[46] Rec. Doc. No. 20, p. 38.
[47] Rec Doc. No. 18, pp. 9-13.

law:

> f. Governing Law. This Agreement becomes valid and effective only when we have signed it, and it will be interpreted under the substantive laws of Maryland, not including its conflict of laws provision or such provisions of any other jurisdiction; except that nothing herein shall be construed to establish independently your right to pursue claims under Maryland's Franchisee Registration and Disclosure Law.[48]

Guarantors rely on Louisiana law without addressing the choice of law provision in the Franchise Agreement. Nonetheless, the Court has performed a choice of law analysis. The Court must first determine whether there is actually a conflict between Maryland law and Louisiana law.

Under Louisiana law, arbitration awards shall be vacated in the following circumstances:

> A. Where the award was procured by corruption, fraud, or undue means.
>
> B. Where there was evident partiality or corruption on the part of the arbitrators or any of them.
>
> C. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced.
>
> D. Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[49]

Similarly, Maryland law provides that courts shall vacate arbitration awards in instances of:

> (1) An award was procured by corruption, fraud, or other undue means;
>
> (2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;

[48] Rec. Doc. No. 24, p. 20.
[49] La. Stat. Ann. § 9:4210 (1948).

> (3) The arbitrators exceeded their powers;
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 3-213 of this subtitle, as to prejudice substantially the rights of a party; or
>
> (5) There was no arbitration agreement as described in § 3-206 of this subtitle, the issue was not adversely determined in proceedings under § 3-208 of this subtitle, and the party did not participate in the arbitration hearing without raising the objection.[50]

Louisiana law and Maryland law provide the same requirements for vacatur with the exception of Maryland's additional provision for instances when no arbitration agreement exists, which is not alleged here. Hence, there is no conflict between Louisiana law and Maryland law, and a further choice-of-law analysis is not necessary. Pursuant to the Franchise Agreement, Maryland law shall be applied.[51]

**a. Procedural Misconduct and Prejudice**

In support of their motion, Guarantors rely on La. Stat. Ann. § 9:4210(d) (1948).[52] The Maryland equivalent provides for vacatur where "the arbitrators exceeded their powers"[53] by reaching "a completely irrational result."[54] Guarantors contend they were prejudiced by being "subjected to an arbitration process that disregarded the agreed procedural rules."[55] Yet Guarantors make no argument as to the result the arbitrator reached, nor it's rationality: rather, they merely argue that the arbitrator exceeded his

---

[50] Md. Code Ann., Cts. & Jud. Proc. § 3-224(b).

[51] The Court emphasizes that the same result would occur even if Louisiana law were applied because there is no conflict between Louisiana law and Maryland law.

[52] La. Stat. Ann. § 9:4210(d) (1948) provides: "Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

[53] Md. Code Ann., Cts. & Jud. Proc. § 3-224(b)(3) (2006).

[54] *See Downey v. Sharp*, 438 Md. 249, 259 (2012); *Prince George's County Educators' Ass'n, Inc. v. Board of Educ. Of Prince George's County*, 61 Md. App. 249, 253-54 (1985).

[55] Rec. Doc. No. 38, pp. 10-13.

authority by both failing to provide notice of the award issuance and by failing to comply with AAA Rule R-40(c)[56] when he issued an award within 30 days of confirmation of close of record.[57] Movants cite no authority for the proposition that an alleged technical failure to adhere to time delays is grounds for vacatur. Guarantors' procedural argument does not demonstrate that the arbitration decision was irrational or otherwise exceeded the arbitrator's authority.

**b. Untimely Decision and Prejudice**

Guarantors assert the arbitrator violated La. Stat. Ann. § 9:4213 (1948)[58] by failing to render a timely decision which resulted in a tolling[59] of the statutory deadline to vacate.[60] As established above, Maryland law is the applicable law, not Louisiana law. The applicable Maryland statute is Md. Code Ann., Cts. & Jud. Proc. § 3-224(a)(1), which provides: "a petition to vacate the award shall be filed within 30 days after delivery of a copy of the award to the petitioner."[61]

Guarantors received notice of the award issuance on September 8, 2025,[62] filed their state court motion for vacatur on September 16, 2025,[63] well within the 30-day deadline. There is no prejudice and this argument is spurious.

[56] AAA R-40(c) provides: "The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing. The AAA may extend the time limit for rendering of the award only in unusual and extreme circumstances."
[57] Rec. Doc. No. 20, pp. 10-11.
[58] La. Stat. Ann. § 9:4213 provides "a motion to vacate, modify, or correct an arbitration award must be served on the adverse party or the adverse party's attorney within three months after the award is filed or delivered."
[59] Guarantors use the term "tolling" which is a pause in the running of a statute of limitations. Tolling would actually benefit Guarantors because it would mean the time would not be held against them when determining whether they filed a motion for vacatur within the proper timeframe. Nonetheless, this issue is still without merit because Guarantors filed a motion for vacatur within the proper timeframe pursuant to both Maryland and Louisiana statutes.
[60] Rec. Doc. No. 38, pp. 1-6.
[61] Md. Code Ann., Cts. & Jud. Proc. § 3-224(a)(1) (2006).
[62] Rec. Doc. No. 38, p. 1.
[63] *Id.*

**c. Due Process**

Guarantors also claim a lack of notice deprived them of procedural due process under the Fourteenth Amendment to the Constitution.[64] Specifically, they assert a lack of notice from the AAA during the arbitration process.[65] Choice points out that Guarantors "received notice of the proceeding and were given an opportunity to be heard and submit evidence, both of which they did."[66] Choice further asserts that "irregularities in the arbitration procedure do not amount to a due process violation or a cause to vacate an arbitration award."[67] The Court agrees.

In *Mathews v. Eldridge*, the Supreme Court adopted a balancing test for procedural due process.[68] At a minimum, notice and a hearing are required before an individual may be deprived of his property or liberty interests.[69] But, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands."[70] Under the *Mathews* test, the specific process due in a particular situation is found by balancing three factors:

> (1) the private interest that will be affected by the official's actions, (2) the risk of an erroneous deprivation of that private interest and the probable value, if any, that additional procedural protections would provide, and (3) the interest that the government seeks to achieve.[71]

The Guarantors had a meaningful opportunity to participate in the arbitration process. Critically, Guarantors submitted briefs and evidence in the arbitration.[72] The

[64] *Id*. at 1-6.
[65] *Id*.
[66] Rec. Doc. No. 18, p. 5.
[67] *Id*.
[68] *Mathews v. Eldridge*, 96 S.Ct. 893, 896 (1976).
[69] *Id*.
[70] *Id*. at 334.
[71] *Id*. at 321.
[72] Rec. Doc. No. 38, p. 27.

arbitration time delays were extended to provide futile notice to the Principals.[73] The delay had no negative effect whatsoever on the Guarantors. Failure to receive a status update does not constitute a denial of due process. Again, the argument is spurious given that Guarantors clearly had notice and an opportunity to be heard. The Due Process claim is without merit.

**d. Deceased and Non-Existent Parties**

Guarantors argue that because LeBlanc was deceased and Faith Investments's charter was revoked at the time of arbitration, the parties were "non-existent," and the arbitration award null and void.[74] Choice is correct that that the Guarantors lack legal authority to seek to overturn the award on behalf of Principals. Furthermore, the arbitration award was rendered directly against Guarantors and Principals, jointly, individually, and severally.[75] Once again, Movants provide no legal authority to support their argument. The claim is meritless.

**e. Guarantors' Obligations are Accessory to Principals' Obligations**

Guarantors further contend that because their obligations are accessory to Principals' obligations, once LeBlanc died and Faith Investments's charter was revoked, there was no valid principal debt to which their guaranty could attach.[76] This argument is not supported by the law.

Guarantors rely on La. C.C. art. 3035 in support of their argument, which establishes that a "suretyship is an accessory" to a principal's contractual obligation.[77]

---

[73] Rec. Doc. 38, p. 30.
[74] Rec. Doc. No. 20.
[75] Rec. Doc. No. 40, pp. 5-7.
[76] Rec. Doc. No. 20, p. 10.
[77] La. Civ. Code Ann. art. 3035 (1988).

Under Maryland law, "[a] contract of guaranty, similar to a contract of suretyship, is an accessory contract."[78]

Maryland courts hold that guaranty contracts are:

> collateral to and independent of the principal contract that is guaranteed and, as a result, the guarantor is not a party to the principal obligation. A guarantor is therefore secondarily liable to the creditor on his contract and his promise to answer for the debt, default, or miscarriage of another becomes absolute upon default of the principal debtor and the satisfaction of the conditions precedent to liability.[79]

Maryland courts have further explained the role of guarantors as:

> the original contract of the principal is not the guarantor's contract, and the guarantor is not bound to take notice of its nonperformance. Rather, the guarantor agrees that the principal is able to and will perform a contract that he has made or is about to make, and that if he defaults the guarantor will pay the resulting damages provided the guarantor is notified of the principal's default. As such, the guarantor insures the ability or solvency of the principal.[80]

While Guarantors are correct that a guaranty is an accessory to a principal's contractual obligation, they fail to demonstrate how or why the Principals' contractual obligation is void. Principals may be released from contractual obligation for a variety of instances,[81] including but not limited to: (1) the purpose of the contract is completely frustrated and rendered impossible;[82] (2) novation;[83] and (3) accord and satisfaction.[84]

---

[78] *See Chicago Title Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 120 Md. App. 538, 550 (1998); *Mercantile Club, Inc. v. Scherr*, 102 Md. App. 757, 766 (1995); *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 260 (1985).
[79] *Chicago Title*, 120 Md. App. at 550.
[80] *General Motors*, 303 Md. at 260.
[81] Although Maryland law is applicable here, because Guarantors relied upon Louisiana law, the Court highlights the results would be the same pursuant to La. Civ. Code Ann. art. 3059 (1988), which establishes "the extinction of the principal obligation extinguishes [a] suretyship." Louisiana law indicates a principal's obligation is extinguished in instances of performance, impossibility, novation, voluntary remission, compensation, or confusion. See La. Civ. Code Ann. arts. 1854; 1873; 1879; 1888; 1893; 1903 (1985).
[82] *Critzos v. Marquis*, 256 Md.App. 684, 692 (App. Ct. Md. 2023).
[83] *Holzman v. Fiola Blu, Inc.*, 125 Md.App. 602, 626 (Md. Spec. App. 1999).
[84] *Washington Homes, Inc. v. Baggett*, 23 Md.App 167, 174 (Md. Spec. App. 1974).

Guarantors provide no evidence of a novation or accord and satisfaction. A frustration of purpose argument requires proof of three things: "First, the purpose that is frustrated must have been a principal purpose of that party in making the contract, the frustration must be substantial, [and] the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made."[85]

Guarantors vaguely argue impossibility due to LeBlanc's Parkinson's disease and ultimate death,[86] as further noted in the award:

> LeBlanc suffered from Parkinson['s] disease for approximately thirteen (13) years until his death on May 23, 2020. [Guarantors] state that the Parkinson['s] disease caused Mr. LeBlanc to give up his plan to build and operate a Choice branded hotel. [Guarantors] did not contend that Mr. LeBlanc's death, some two years after the Hotel was to begin operating, excused Respondents [both Principals and Guarantors] from its obligations under the Franchise Agreement or the Guaranty.[87]

While the death of a principal is unfortunate, LeBlanc was not the sole principal in the matter, and his death did not occur until after the matter had already been submitted to arbitration. Guarantors offer no argument or explanation as to how LeBlanc's disease and death frustrated the purpose of the contract. Accordingly, Guarantors have failed to demonstrate that Principals' obligations were rendered impossible due to frustration of purpose.

### f. Guarantors as Signatories and Franchise Agreement Relevance

Finally, Guarantors contend that, because they were not signatories to the Franchise Agreement, the terms of the Franchise Agreement are irrelevant to the arbitration process.[88] This claim is easily defeated because *Johnson is a signatory*. A

---

[85] *Panitz v. Panitz*, 144 Md. App. 627, 639 (2002).
[86] Rec. Doc. No. 20.
[87] Rec. Doc. No. 38, p. 29.
[88] Rec. Doc. No. 20, pp. 11-12.

guaranty is a secondary obligation where Guarantors promise to be responsible for the debts of Principals if Principals fail to perform. Here, Guarantors promised to be liable for Principals' failure to perform in constructing a hotel, pursuant to the Franchise Agreement between Principals and Choice. The Guaranty Agreement in this case expressly provides that:

> Guarantor [Capfund, LeBlanc, and Johnson, individually, jointly and severally] personally and unconditionally guarantees that all of Franchisee's obligations under the Franchise Agreement, as amended, and all related agreements will be punctually paid and performed.[89]
>
> …
>
> Guarantor agrees to promptly pay all sums owed to [Defendant] and its subsidiaries or affiliates, and all damages, costs, and expenses, including reasonable attorneys' fees, that [Defendant] or its subsidiaries or affiliates incur as a result of any default under this Guaranty, the Franchise Agreement, or any related Agreement, including all outstanding fees, any liquidated damages due under the Franchise Agreement, and any costs and expenses that Choice or its subsidiaries or affiliates incur to obtain injunctive relief for the enforcement of any portion of this Guaranty, the Franchise Agreement, or any related Agreement.[90]

Hence, Guarantors' argument on this claim is meritless.

## III. CONCLUSION

For the foregoing reasons, Guarantors' Motion to Vacate Arbitration Award is DENIED. Judgment shall be entered in favor of Defendant Choice Hotels.

IT IS SO ORDERED.

Baton Rouge, Louisiana, this 28th day of September, 2026.

Shelly D. Dick

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[89] Rec. Doc. No. 40-1, p. 1.
[90] *Id.*